J-S60001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| E.M.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| P.L.B. | : | No. 1009 MDA 2019 |

Appeal from the Order Entered May 21, 2019
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-19-03965

BEFORE:   SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 10, 2020**

E.M.B. ("Wife") appeals from the trial court's May 21, 2019 order

denying Wife's request for a final order against P.L.B. ("Husband") pursuant

to the Protection from Abuse Act ("PFA"), 23 Pa.C.S. §§ 6101–6122.  After

careful review, we affirm.

The trial court set forth the following procedural history and statement

of the facts:

PROCEDURAL HISTORY

        This case began when [Wife] filed her *pro se* petition
    requesting a Temporary Protection from Abuse Order (PFA).  The
    court entered such an order on April 29, 2019.  The court set an
    initial hearing date for May 7, 2019, but continued the hearing to
    allow [Wife] time to find counsel.  The court held a hearing on May
    21, 2019. Both [Wife] and [Husband] participated with counsel.
                            * * *

---

[*]  Retired Senior Judge assigned to the Superior Court.

STATEMENT OF FACTS

[Wife] and [Husband] married in 1993 and separated on September 3, 2017. Wife now lives in a rental property. Husband continues to live in the marital home. This has been the parties' arrangement since December 2017, and Wife testified that she has no wish to move back to the marital home or exclude Husband from it. Wife and Husband share one minor child; the remainder of their children are adults. The Office of Domestic Relations has a support order in place, and Wife finds this satisfactory. They also have a custody arrangement regarding this child, which they reached by agreement prior to a custody hearing. Wife testified that she finds the arrangements satisfactory and has no desire to alter the custodial time the child spends with either her or Husband. However, she did want to change the location of the custody transfers, and under the temporary PFA the exchanges were no longer taking place at her residence.

Wife sought a PFA because she felt threatened by Husband. The inciting incident occurred on April 15, 2019. Wife observed Husband drive through her driveway, a path which took him near the barn where she parked her car. Wife testified that Husband looked into her carport and then left. Although Husband regularly came to Wife's residence to pick-up the child, Wife testified on direct examination that Husband had no reason to be there that day, but on cross she admitted she had sent him an email that morning requesting he come to return some of the child's items. Two days later, Wife found a dead rabbit lying near her car. She called the police, filed a report, informed her landlord - who posted no-trespassing signs and sent a no-trespass letter to Husband.

Husband disputed Wife's version of this incident. He testified that he came to Wife's residence on April 15, 2019, for a custody exchange. He drove through her driveway-rather than wait at the end or on the street-to ensure she was home, because he could not see her car in the carport. Husband testified that he drove up to the house to drop-[o]ff the child and did so without incident. He denied leaving a dead rabbit for Wife to find. Wife's residence is located on a farm with extensive surrounding land and fields.

The parties have a contentious history long predating the dead rabbit, and they cannot agree on how this history should be

understood. Wife testified that Husband video tapes her. He admitted doing so, but only after the no-trespass letter and only to prove that he was not trespassing on her property during custody exchanges. Wife testified that Husband once smacked her phone out of her hand during a custody exchange. Wife believes he did this purposefully, but Husband insisted it was accidental and denied making any physical contact with Wife. On a different occasion, Wife visited Husband's residence to retrieve a piece of mail. She testified that Husband attempted to force her into the garage. Husband recalls only that Wife came into his house through the garage without announcing herself, he gave her the mail, and asked her to leave. Wife also testified that Husband made accusations against her based-on information he could have only have gained from her medical records. Husband admitting saying nasty things to Wife but insisted he did not pry into her records. Instead, he received notifications from their insurance company since they remained on the same policy.

Wife also testified that Husband took action to harass her. He "helped" her look for a job by making postings on internet job boards using her email address. She testified that he followed her or had her followed. He told her he had hired a private eye and asked her questions about her activities about which he could not otherwise have known. He took photographs of her. He followed her on social media web sites and questioned her about her social life. Finally, her vehicle has been vandalized on three separate occasions, and each time Husband had been at her house immediately prior to Wife discovering the damage. Wife submitted exhibits – including photographs, email messages and text messages – purporting to support this testimony. For these reasons, Wife believed Husband was stalking her and threatening her. She feared him and what he might do. She did not believe he would leave her alone absent a Protection from Abuse Order.

Trial Court Opinion, 7/22/19, at 1–4 (internal citations omitted). Following the hearing, the trial court found that Wife failed to establish abuse by a preponderance of the evidence and dismissed the temporary PFA. Wife filed

a timely notice of appeal. Both the trial court and Wife complied with Pa.R.A.P. 1925.

Wife presents the following questions for our review:[1]

1. Did the Trial Court misapply the law in dismissing Wife's request for a final protection from abuse Order when the Court found "there was no mention of pain" (N.T. page 121 May 21, 2019) when finding Wife did not carry her burden of proof, pursuant to 23 Pa.C.S. § 6102(a)(2) and (5)?

2. Did the Trial Court abuse its discretion in finding that Wife's request for a final protection from abuse Order was motivated by custody (N.T. page 121 May 21, 2019) when Wife testified the parties already had a custody order in place she was not seeking to disturb, a support order in place she was not seeking to disturb, and she was residing in a rental property while Husband retained the marital home, and that she had made no request to evict him from that location? (N.T, pages 8-9 May 21, 2019).

3. Did the Trial Court abuse its discretion by limiting relevant testimony by ruling that portions of Wife's testimony were about custody and not protection from abuse?

4. Did the Trial Court misapply the law in finding that Wife had not met her burden of proof pursuant to 23 Pa.C.S. § 6102(a)(5) when she produced exhibits consisting of Husband's text messages where he makes relevant admissions, including but not limited to, that he is watching Wife, and has hired a P.I. to do so?

5. Did the Trial Court abuse its discretion in calling Wife a name, and accusing her of conduct similar to that alleged in testimony

---

[1] We note that Wife failed to include the questions she presented for review in her brief, as required by Pa.R.A.P. 2111 and 2116. Instead, Wife referred this Court to a copy of her Concise Statement of Errors Complained of on Appeal, which she included in the reproduced record. Although we could find waiver on these grounds, this Court located the Concise Statement in the certified record and will consider Wife's claims. However, we strongly discourage such a practice.

about Husband (calling her a "knucklehead", N.T. page 121 May 21, 2019) when Husband corroborated in his testimony he had no such proof Wife was engaging in practices akin to his? (N.T. page 99 May 21, 2019).

6. Did the Trial Court abuse its discretion when stating, on the record, "Just so you know. I get the rationale. And I can see how one would do that..." (N.T. page 82 May 21, 2019) when addressing the fact that Husband might be following or hiring a P.I. to follow Wife to determine if she was cohabitating?

7. Did the Trial Court misapply the law not only in indicating a potential rationale why Husband would follow or hire one to follow Wife to see if she was cohabitating, stating on the record "...You would agree that there is a component of APL (alimony pendente lite) relative to unfaithfulness..." (N.T. page 82 May 21, 2019) when Wife was not receiving spousal support and APL has no such conditions?

8. Did the Trial Court abuse its discretion and misapply the law when Wife's testimony indicated:

Husband was following her;

Entering on to her property without permission;

Telling her he had a P.I. following her;

Being in a location where Wife was and sending her a picture of her vehicle while there;

Providing Wife's contact information to an online job search website causing her to be inundated with calls and emails to random third parties;

Struck her in the chest and hand while trying to hit her cell phone out of her hand;

Physically forced her into the garage of the marital home when she was attempting to leave;

Present on Wife's property when he had no reason to be there, after which Wife observed damage to her motor vehicle on three occasions and a dead whole rabbit on a fourth occasion?

9. Did the Trial Court abuse its discretion and misapply the law in denying Wife a final protection from abuse Order based on the

totality of the evidence, and contrary to the findings of the Court the filing was about custody, when Wife was not pursuing a change to the custody schedule with the parties' son?

Concise Statement of Errors Complained of on Appeal, 6/19/19, at unnumbered 2–5.

"We review the propriety of a PFA order for an abuse of discretion or an error of law." *Ferko-Fox v. Fox*, 68 A.3d 917, 920 (Pa. Super. 2013). Abuse of discretion is defined as follows:

The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, with the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Mescanti v. Mescanti*, 956 A.2d 1017, 1019 (Pa. Super. 2008) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (citation omitted)). Moreover, we note that on appeal this Court will defer "to the credibility determinations of the lower court as to witnesses who appeared before it." *Miller on Behalf of Walker v. Walker*, 665 A.2d 1252, 1255 (Pa. Super. 1995). We review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevails before the PFA court. *Snyder v. Snyder,* 629 A.2d 977, 982 (Pa. Super. 1993).

In support of her first allegation of error, Wife avers that the trial court erred when it "found" that "there was no mention of pain" when finding Wife

did not carry her burden of proof pursuant to 23 Pa.C.S. § 6102(2) and (5).

Wife's Brief at 14. Pursuant to 23 Pa.C.S. § 6102(2) and (5), abuse is defined

as:

> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> * * *
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(2), (5). In support of her argument, Wife correctly states

that pursuant to the Act, a victim need not show actual physical violence or

contact before a PFA may be issued, as long as the victim's fear is reasonable.

Wife's Brief at 15. Wife underscores her testimony at the PFA hearing and

argues it established that Wife was in reasonable fear of bodily injury. *Id*. at

17. Wife asserts that the trial court misapplied the law by requiring "pain" on

her part. *Id*. at 18.

Preliminarily, we note the following statement by the trial court:

> So I find that the plaintiff has failed to carry her burden. This is not custody court. This is PFA. And there was not one shred of evidence about bodily harm, injury. There was no mention of pain. There was no mention of whatever happened to the phone being hit. There was no pain mentioned at all. There is no bodily injury here and there is no reasonable fear of bodily injury.

N.T., 5/21/19, at 121. As the trial court stated, although it discussed the lack

of testimony regarding pain suffered by Wife, the court found that Wife failed

to show any bodily injury or that she was in reasonable fear of bodily injury. Trial Court Opinion, 7/22/19, at 5. Moreover, the trial court heard the testimony of both Wife and Husband, found Husband more credible than Wife, and dismissed Wife's PFA petition because she failed to carry her burden by a preponderance of the evidence.

It is well established that the credibility of witnesses is within the exclusive province of the trial court, and we will not disturb those determinations on appeal. **C.H.L. v. W.D.L.**, 214 A.3d 1272, 1277 (Pa. Super. 2019). **See also Mescanti**, 956 A.2d at 1019–1020 ("Credibility of the witnesses and the weight afforded their testimony is within the exclusive province of the judge as fact finder."); **Karch v. Karch**, 885 A.2d 535, 537 (Pa. Super. 2005) ("[T]his Court has no authority to overturn the trial court's credibility determinations in this [PFA] matter."). Thus, we defer to the lower court's determination of the credibility of the witnesses at the PFA hearing. **R.G. v. T.D.**, 672 A.2d 341, 342 (Pa. Super. 1996). Indeed, "as long as sufficient evidence exists in the record to support the credibility findings, this Court may not overturn those findings." **In re Marlo**, 58 A.3d 1, 16 (Pa. 2012). Wife is due no relief.

Wife addresses her second and third allegations of error together. Wife avers that the trial court erred when it found that her request was motivated by custody concerns and that the trial court erred when it limited testimony it

found to be related to custody and not the PFA petition at issue. Wife's Brief at 18–19.

Although Wife avers that the trial court erred when it found her request for a PFA was motivated by custody, she does not set forth how this alleged error constitutes an abuse of discretion. Instead, Wife again discusses the evidence and testimony and asserts that the trial court erred when it found Husband more credible than Wife. As discussed *supra*, the credibility of witnesses is within the exclusive province of the trial court, and we will not disturb those credibility determinations on appeal. Wife has failed to show error on the part of the trial court.

Wife also argues that the trial court erred when it limited what she believes to be relevant testimony. Wife's Brief at 19. Wife, however, has failed to set forth the place in the record where her testimony was limited. This Court will not scour the record on an appellant's behalf trying to find errors made by the trial court. **C.H.L.**, 214 A.3d at 1278. "When an allegation is unsupported by any citation to the record, such that this Court is prevented from assessing the issue and determining whether error exists, the allegation is waived for purposes of appeal." **Id**. Indeed, it is Wife's responsibility to identify any alleged errors, and the failure to do so results in waiver. **Id**. **See also Hayward v. Hayward**, 868 A.2d 554, 558 (Pa. Super. 2005).

Even if this issue were not waived, we would find it to be of no merit. In its opinion, the trial court identified what it believed to be the portions of

the transcript to which Wife was referring. Trial Court Opinion, 7/22/19, at 7. In that portion of the transcript, Wife's counsel questioned Wife about what led to her seeking a PFA against Husband. Wife responded and began to testify regarding her minor son's feelings and what he indicated to her. N.T., 5/21/19, at 10–11. Husband's counsel objected, and the trial court sustained the objection. *Id*. As the trial court properly noted, the feelings of Wife's minor son are not relevant to whether Wife is entitled to a PFA against Husband, particularly where, as here, the minor child is not named in the PFA, nor was he called as a witness. Trial Court Opinion, 7/22/19, at 7 (citing Pa.R.E. 401, defining relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence...."). "[T]he child's feelings simply do not have a tendency to make more or less probable the question of whether or not Husband abused Wife by stalking her." Trial Court Opinion, 7/22//19, at 7. Wife's claims of error merit no relief.

In her fourth allegation of error, Wife avers that the trial court misapplied the law when it found Wife had not met her burden of proof pursuant to 23 Pa.C.S. § 6102(a)(5), relating to stalking. Specifically, Wife asserts the trial court erred because she produced exhibits consisting of Husband's text messages in which he said he was watching Wife, and hired a private investigator to do the same. Wife's Brief at 22–23. Wife has again failed to set forth the exhibits or text messages to which she is referring.

Moreover, Wife devotes three sentences to this portion of her brief, fails to discuss the substance of the text messages sent by Husband, and fails to engage in any discussion of 23 Pa.C.S. § 6102(a)(5).[2] Thus, we find this issue waived. **Hackett v. Indian King Residents Assoc.**, 195 A.3d 248, 255 (Pa. Super. 2018) (finding waiver where appellant failed to identify the specialized instruction she alleged should have been read to the jury and failed to cite relevant case law).

Wife addresses her fifth, sixth, and seventh allegations of error together. Wife avers that the trial court abused its discretion when it referred to both her and Husband as "knuckleheads," when it stated on the record that it understood why Husband may have hired a PI to determine if Wife was cohabitating with another individual, and when it commented that it believed that there was a faithfulness component to the award of alimony *pendente lite* ("APL"). Wife's Brief at 24–25. In support of these issues, Wife argues that the trial court "did not give any reasons as to why [it] found that Wife did not carry her burden of proof by a preponderance of the evidence other than there

_____

[2] We note that Wife also appears to misinterpret our prior PFA decisions. In her brief, Wife asserts that this "Court must look at the evidence presented in the light most favorable to the petitioner (Wife)," Wife's Brief at 23. Pursuant to our established jurisprudence, however, this Court will review the evidence in the light most favorable to the verdict winner. **See Mescanti,** 956 A.2d 1020 ("[T]he reviewing court must view the evidence in the light most favorable to **verdict winner**. . . .") (emphasis added). In this case, Husband, not Wife, was the verdict winner; thus, we view the evidence in the light most favorable to Husband.

was no pain or injury to her." **Id**. at 26. Wife misstates the record. As discussed *supra,* the trial court clearly and unambiguously stated that it did not find Wife's alleged fear to be reasonable and repeatedly stated that it did not find Wife's testimony to be credible. Trial Court Opinion, 7/22/19, at 6, 8, 9, 10, 11, 12.

To the extent Wife argues that the trial court abused its discretion by calling both Husband and Wife "knuckleheads," Wife is due no relief. Preliminarily, we note that although Wife avers the trial court abused its discretion when it called her a knucklehead, Wife has not alleged bias on the part of the trial court. Moreover, Wife has failed to show how this assertion is relevant to the fact that Wife failed to carry her burden of proof.

Wife also argues that the trial court abused its discretion by stating that, "Just so you know. I get the rationale. And I can see how one would do that," following Husband's testimony that he took a picture of Wife's car parked in a particular place. Wife's Brief at 28 (citing N.T., 5/21/19, at 82). These statements by the trial court were made after Husband testified that he believed Wife had a history of unfaithfulness and he "was kind of gathering some information and documentation to, you know, the up-and-coming divorce or separation proceedings. That's all it was." N.T., 5/21/19, at 81. Although Wife characterizes the trial court as "acting as if Wife somehow deserved the behaviors directed at her by Husband," a review of the record makes clear that was not the case. Wife's Brief at 26. Instead, as the trial

court stated in its opinion, the statement "was an acknowledgment that the court [found] Husband's testimony credible." Trial Court Opinion, 7/22/19, at 10. Once again, it appears that Wife is attacking the trial court's credibility determinations, discussed *supra*. **Fonner v. Fonner**, 731 A.2d 160, 161 (Pa. Super. 1999) (noting that this Court "defers to the credibility determinations of the trial court as to the witnesses who appeared before it").

Wife also avers that the trial court erred when it asked if fidelity plays a role in the determination of APL. Wife's Brief at 27. Wife references the following exchange between the trial court and the parties' counsel after Husband mistakenly testified that he was paying Wife alimony, and Wife's counsel objected and correctly asserted that Husband was paying Wife APL:

Trial Court: You would agree that there is a component of APL relative to unfaithfulness, is that correct?"

Wife's Counsel: There is not.

Trial Court: For APL?

Wife's Counsel: There is not.

Trial Court: Counsel do you agree with that?

Husband's Counsel: I'm not involved with that, your Honor. It doesn't change my client's thinking and the rationale behind his e-mail saying, this is relevant for our litigation.

N.T., 5/21/19, at 82.

In its opinion, the trial court noted that although it was mistaken on that single point of law, it did not misapply the law because it rendered no decision

regarding support of any kind, APL, or otherwise. Trial Court Opinion, 7/22/19, at 11. We agree with the trial court's assessment. The mere fact that the trial court asked a question regarding APL and incorrectly believed that APL had a faithfulness component is not evidence of the trial court's alleged abuse of discretion when it dismissed Wife's PFA petition. The trial court found Husband's stated reason for photographing Wife to be credible. Specifically, the trial court found credible Husband's testimony that he photographed her not to intimidate or stalk her, but rather to record any marital misconduct that he believed was occurring in anticipation of future divorce proceedings. *Id*. at 11–12. The trial court's admitted error does not rise to the level required to find the trial court abused its discretion. *In re L.D.F.*, 820 A.2d 714, 717 (Pa. Super. 2003) (noting that abuse of discretion is "not merely an error of judgment, but also a conclusion that the law has been overridden or misapplied, or judgment exercised is manifestly unreasonable, or the result of prejudice, bias, or ill-will as shown by the record"). Wife is due no relief.

In her eighth and ninth allegations of error, which Wife addresses together, Wife again argues that the trial court abused its discretion when it denied the PFA petition, despite Wife's testimony regarding numerous alleged

incidents between her and Husband.[3] Wife's Brief at 31. Wife also avers that based on the totality of the evidence, the trial court erred in denying the PFA petition. *Id*. at 33. Finally, Wife again asserts that the trial court erred when it found "the filing was about custody." *Id*. To the extent Wife contends that the trial court abused its discretion when it denied her PFA because it did not find her testimony regarding several incidents of alleged abuse to be credible, we refer to our discussion *supra* regarding credibility determinations on appeal. Similarly, Wife's comments that the trial court "found" that the PFA filing was about custody are not supported by the record and merit no relief.

For all the forgoing reasons, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/10/2020

---

[3] Despite Wife's claims that the trial court abused its discretion, Wife was aware that resolution of the PFA petition turned on the credibility of the witnesses. N.T., 5/21/19, at 119 (repeatedly noting that the trial court has "credibility [determinations] to resolve").